UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSELITO MARTINEZ,

                        Plaintiff,

v.                                                    3:16-CV-0908
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN, GORTON LAW FIRM                     PETER GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                  JASON PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 13, 14.)

Currently before the Court, in this Social Security action filed by Joselito Martinez

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth

below Plaintiff's motion is denied and Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1968.  (T. 194.)  He completed high school.  (T. 201.)

Generally, Plaintiff's alleged disability consists of hepatitis C, arthritis, depression, joint

pain, low back pain, and foot/ankle pain.  (T. 200.)  His alleged disability onset date is

February 1, 2010.  (T. 194.)  His date last insured is December 31, 2011.  (T. 79.)  He

previously worked as a laborer, in maintenance, and as a welder.  (T. 201.)

### B.      Procedural History

On April 30, 2013, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 105.)  Plaintiff's applications were initially denied, after which he

timely requested a hearing before an Administrative Law Judge ("the ALJ").  On

February 3, 2015, Plaintiff appeared before the ALJ, Jennifer Gale Smith.  (T. 31-78.)

On March 5, 2015, ALJ Smith issued a written decision finding Plaintiff not disabled

under the Social Security Act.  (T. 9-30.)  On June 22, 2016, the Appeals Council ("AC")

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this

Court.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 14-26.)  First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2011 and Plaintiff had not engaged in substantial gainful activity since February 1, 2010.  (T. 14.)  Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, inflammatory arthritis, a depressive disorder, and an anxiety disorder.  (T. 15.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15-18.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional non-exertional limitations.  (T. 18.)[1]  The ALJ determined that Plaintiff could not kneel, crouch, crawl, or climb ladders, ropes, and scaffolds.  (*Id.*)  The ALJ determined Plaintiff could use his upper extremities to occasionally push and pull, and to frequently reach, grasp, and perform fine manipulation.  (*Id.*)  She determined Plaintiff was able to engage in simple, routine, and repetitive tasks in a low-stress job, defined as a job that had occasional changes in the work setting that required occasional decision-making and occasional judgment.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 23-25.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1]      Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§404.1567(a), 416.967(a).

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erroneously substituted her own opinion for the medical opinions in the record regarding Plaintiff's ability to reach, grasp, and perform fine manipulation. (Dkt. No. 9 at 10-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly assess Plaintiff's limitations in his ability to maintain attention and concentration/stay on task, perform at a consistent work pace, and maintain regular attendance. (*Id.* at 15-18.) Third, and lastly, Plaintiff argues that the ALJ improperly weighed the opinions of treating physician, Sajid Khan, M.D., and treating therapist Thomas Butler, LCSW. (*Id.* at 18-23.)

## B.   Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ did not substitute her own opinion for the medical opinions of record regarding Plaintiff's ability to reach, grasp, and perform fine manipulation. (Dkt. No. 10 at 6-8 [Def.'s Mem. of Law].) Second, Defendant argues substantial evidence supports the ALJ's assessment of Plaintiff's ability to maintain attention and concentration/stay on task, maintain work pace, and maintain regular attendance. (*Id.* at 8-11.) Third, and lastly, Defendant argues the ALJ properly weighed the medical assessments from Dr. Khan and Mr. Butler. (*Id.* at 11-13.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

## A.     Plaintiff's Ability to Reach, Grasp, and Perform Fine Manipulation

Plaintiff's RFC is "the most [Plaintiff] can still do despite [his] limitations."  20

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Here, the ALJ limited Plaintiff to sedentary

work with additional non-exertional limitations.  (T. 18.)  Plaintiff argues that the ALJ's

determination, that Plaintiff retained the ability to use his upper extremities to frequently

reach, grasp, and perform fine manipulation, is not supported by substantial evidence in

the record.  (Dkt. No. 9 at 10-15 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that

the ALJ erroneously rejected the opinion of consultative examiner, Justine Magurno, M.D. and substituted her own opinion.  (*Id.*)

Reaching limitations are non-exertional.  20 C.F.R. § 404.1569a(c)(vi).  Reaching is required in almost all jobs, and a reaching limitation "may eliminate a large number of occupations a person could otherwise do."  SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)).

The Second Circuit has remanded where an ALJ failed to discuss a plaintiff's ability to reach and the record contained a medical opinion that plaintiff's reaching ability was limited.  *See Sesa v. Colvin*, 629 F. App'x 30, 33 (2d Cir. 2015).  Here, unlike in *Sesa*, the ALJ discussed Plaintiff's ability to reach and provided an analysis outlining the factors she relied on in making her determination that Plaintiff retained the ability to frequently reach.

Dr. Magurno opined on July 9, 2013 that Plaintiff had, among other limitations, "marked" limitations for reaching.  (T. 329.)  The ALJ did not adopt this portion of Dr. Magurno's opinion.  (T. 22.)  The ALJ reasoned that Dr. Magurno's reaching limitations were "not fully consistent" with Plaintiff's activities of daily living and "post-alleged onset date work activity," and further no treating source assigned any upper extremity limitations or limitations in the ability to reach.  (*Id.*)

Contrary to Plaintiff's contentions, the ALJ did not substitute her own medical opinion in making her determination.  First, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F.App'x 53, 56 (Ed Cir. 2013.)  Further, an RFC determination need not align with a specific medical opinion, but may be based on the record as a whole.  *Monroe v. Comm'r of Soc. Sec.,*

No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017).  Therefore, an ALJ is

not impermissibly substituting her opinion merely because her RFC determination does

not mirror a specific medical opinion in the record.

Here, the ALJ properly addressed Plaintiff's ability to reach and referred to

substantial evidence in the record to support her determination that Plaintiff could

frequently reach.  First, Plaintiff did not allege any limitation in his ability to reach and no

treating source opined that Plaintiff was limited in his ability to reach.  *See Dumas v.*

*Schweiker,* 712 F.2d 1545, 1553 (2d Cir. 1983) (An ALJ "is entitled to rely not only on

what the record says, but also on what the record does not say.").

To be sure, the record did contain complaints of shoulder pain.  A provider

specifically noted on June 3, 2010, that Plaintiff had no swelling in his shoulders.  (T.

306.)  Plaintiff complained of shoulder pain in August of 2010, but had good range of

motion.  (T. 303.)  Another provider noted on October 10, 2011, that Plaintiff had "no

particular swelling of knees or anywhere else."  (T. 286.)  On March 21, 2012, Plaintiff

complained of "some right shoulder pain" that occurred after a fight and the provider

noted he maintained good range of motion.  (T. 279.)  On March 25, 2014, Plaintiff

complained of bilateral shoulder pain aggravated by raising his arms.  (T. 463.)  Despite

these notations of shoulder pain, overall, Plaintiff received medical treatment primarily

for lumbar back pain and knee pain and the majority of treatment notations are silent

regarding any complaints of shoulder pain or objective observations of the shoulders.

(T. 244-252, 277, 286, 289, 359-360, 364-383.)

Second, Plaintiff's activities of daily living and work activities support the ALJ's

determination.  As outlined by the ALJ, Plaintiff testified that he worked under the table

as a construction laborer after his alleged onset date. (T. 18-19, *referring to* T. 41-42.)
He testified that he cleaned floors, mix concrete, and cut wood. (T. 41-42.) Plaintiff
testified that even on days where his joints swelled "a lot" he was able to do "easy jobs"
like cleaning. (T. 52.) Plaintiff further testified that he was able to "drag" a flat screen
television. (T. 53.)

Overall, the ALJ did not substitute her own medical opinion for that of Dr.
Magurno. The ALJ properly determined that Dr. Magurno's opinion regarding Plaintiff's
ability to reach was inconsistent with other evidence in the record. The ALJ discussed
Plaintiff's ability to reach and referred to substantial evidence in the record to support
her determination, "[w]here the [ALJ's] decision rests on adequate findings supported by
evidence having rational probative force, [this Court] will not substitute our judgment for
that of the Commissioner." *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's ability to perform
grasping and fine manipulations. (Dkt. No. 9 at 10-15 [Pl.'s Mem. of Law].) The ALJ
determined that Plaintiff could frequently grasp and perform fine manipulation. (T. 18.)

The ALJ's RFC determination, that Plaintiff could frequently grasp and do fine
manipulation, is supported by Dr. Magurno's opinion that Plaintiff had "moderate
limitations for activities requiring grasping" and "mild limitations for fine motor activities."
(T. 329.) Dr. Magurno noted on examination that Plaintiff had full range of motion in his
elbows, forearms, and wrists. (T. 328.) She observed swelling in his fingers on his right
and left hand and noted that all fingers joints were tender to palpation. (*Id.*) Dr.
Magurno observed on examination that Plaintiff's hand and finger dexterity were intact,

his grip strength was 4/5 bilaterally, and he was able to zipper, button, and tie a bow. (T. 329.)

Other medical record further supports the ALJ's determination. Despite evidence of joint pain and swelling in Plaintiff's hands, the record showed that Plaintiff still had good range of motion. (T. 286, 306.) Plaintiff outlined evidence in the record indicating swelling and pain in his hands and wrists; however, it is not enough for Plaintiff to merely argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Therefore, the ALJ's determination that Plaintiff could frequently grasp and perform fine manipulation is supported by Dr. Magurno's opinion that Plaintiff had moderate limitations in his ability to grasp and mild limitations for fine manipulation, and is also supported by evidence in the record which indicated that despite swelling Plaintiff had full range of motion in his hands.

Overall, the ALJ's reaching, grasping, and manipulative limitations are supported by substantial evidence in the record as outlined herein. The ALJ did not impermissibly substitute her own opinion for that of medical opinion evidence in the record. Indeed,

the ALJ thoroughly summarized the record and outlined her reasoning for making her determination that Plaintiff could frequently reach, grasp, and perform fine manipulation.

### B. Plaintiff's Ability to Maintain Attention and Concentration/Stay on Task, Work Pace, and Regular Attendance

The ALJ determined that Plaintiff had the mental RFC to engage in simple, routine, and repetitive tasks in a low-stress job, defined as a job that had occasional changes in the work setting that required occasional decision making and occasional judgment. (T. 18.) Plaintiff argues that the ALJ erred in her mental RFC determination because medical evidence in the record supported greater mental functional limitations. (Dkt. No. 9 at 15-18 [Pl.'s Mem. of Law].)

Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see also* SSR 85-15 (S.S.A. 1985).

On July 9, 2013, consultative examiner, Cheryl Loomis, Ph.D., examined Plaintiff and provided a medical source statement. (T. 331-335.) She opined that Plaintiff had no impairment in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, and relate adequately with others. (T. 334.) She further opined Plaintiff had a moderate impairment in his ability to maintain attention and concentration, and perform complex tasks independently or under supervision. (*Id.*) Lastly, she opined Plaintiff had a marked impairment in his ability to make appropriate decisions and appropriately deal with stress. (*Id.*) The ALJ afforded Dr. Loomis's opinion significant weight; however,

the ALJ did no adopt Dr. Loomis's opinion that Plaintiff had marked limitations in his ability to make appropriate decisions and deal with stress.  (T. 22.)

Dr. Kamin, a non-examining State agency medical consultant, reviewed the record on August 2, 2013.  (T. 89.)  He opined that based on the medical evidence in the record, including Dr. Loomis's examination and statement, Plaintiff was not significantly limited in his ability to carry out short and simple instructions.  (T. 101.)  Dr. Kamin further opined that Plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work related decisions, and complete a normal workday and workweek without interruptions form psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*)  Dr. Kamin opined Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (*Id.*)  He opined Plaintiff was markedly imitated in his ability to carry out detailed instructions.  (*Id.*)  The ALJ afforded Dr. Kamin's opinion "significant weight." (T. 22.)

Sajid Khan, M.D., completed a "questionnaire" on December 31, 2014.  (T. 471-472.)  Dr. Khan was Plaintiff treating pain management specialist.  (T. 361.)  When asked how often Plaintiff would be "off task," Dr. Khan checked the box indicating "greater than 20% but less than 33%" of a workday.  (T. 471.)  Dr. Khan further indicated that Plaintiff's impairments would cause him to miss work four days of work

per month.  (T. 472.)  Dr. Khan indicated that the limitations he imposed represented the time period between March 26, 2014 and October 31, 2014.  (*Id.*)

The ALJ afforded Dr. Khan's statement "reduced weight."  (T. 22.)  The ALJ reasoned that his opinions were not supported by explanation nor did he cite clinical findings, and the opinions were "generally inconsistent with the overall evidence."  (*Id.*)  The ALJ specifically noted that Dr. Khan's statements regarding Plaintiff being "off task" were speculative, unsupported by clinical findings, and inconsistent with overall medical evidence.  (T. 23.)  The ALJ also reasoned Dr. Khan's statement was inconsistent with Plaintiff's testimony that he was able to work under the table.  (*Id.*)

Plaintiff's treating mental health counselor, Thomas Butler, LCSW, also completed a "questionnaire."  (T. 384-386.)  He opined that in the area of concentration and persistence, Plaintiff had a "medium[2]" limitation in all his ability to: maintain attention and concentration; perform activities within a schedule, maintain regular attendance and/or be punctual with in customary tolerances; and complete a normal work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 384.)  Mr. Butler opined Plaintiff had "marked" limitations in his ability to: interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  (*Id.*)  He opined Plaintiff had a "medium" limitation in his ability to get along with co-workers.  (*Id.*)  Mr. Butler opined Plaintiff had a "marked" limitation in his

---

[2]        The questionnaire provided the following definition for the term medium: "more than slight but less than a serious limitations . . . [t]he individual is still able to function satisfactorily for certain portion of the day and/or perform the tasks satisfactorily on some of the occasions. . . [t]he approximate of loss would be more than 20% for the particular activity but less than 1/3 of the day (33%)."  (T. 384.)

ability to respond appropriately to ordinary stressors in a work setting with simple tasks. (*Id.*)

Mr. Butler also opined Plaintiff would be "off task" greater than 20% but less than 33% of a workday. (T. 385.) He indicated Plaintiff would be absent three or more days per month. (*Id.*) Mr. Butler provided a narrative in which he outlined Plaintiff's diagnosis and medication. (*Id.*) Mr. Butler also stated, in part, that Plaintiff "can feel very anxious [and] wants to avoid people then. He has limitations speaking English [and] is easily frustrated when not understood. When stressed he can become verbally [and] physically confrontational."

On January 20, 2015, Mr. Butler completed a medical assessment form for Broome County Department of Social Services. (T. 474-475.) Mr. Butler indicated that Plaintiff had no limitations in his ability to make simple decisions. (T. 474.) He opined that Plaintiff was moderately limited in his ability to: understand and remember instructions (due to his "English language limitations"); maintain attention/concentration ("level of depression effects this"); make appropriate decisions when faced with unfamiliar/unplanned circumstances; maintain basic standards of personal hygiene and grooming ("when depressed, ignores personal hygiene"); and maintain a consistent work schedule. (*Id.*) He opined Plaintiff was "very limited" in his ability to: correctly carry out instructions ("if spoken to sharply"); maintain socially appropriate behavior ("on probation for anger management issues"); and function in a work setting at a consistent pace ("due to his physical limitations"). (T. 474.)

The ALJ afforded Mr. Butler's opinions "very little weight." (T. 23.) The ALJ reasoned that Mr. Butler was not an acceptable medical source and his opinions were

inconsistent with each other and the longitudinal medical evidence in the record, including his treatment notations and the opinions of Drs. Loomis and Kamin. (*Id.*)

Plaintiff argues that all of the medical opinions, as outlined herein, provide for a "medium" or "moderate" limitation in maintaining attention and concentration, and maintaining work pace and/or regular attendance, and the ALJ failed to analyze or discuss the opinions in formulating the RFC. (Dkt. No. 9 at 17 [Pl.'s Mem. of Law].)

First, the Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F.App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see Cohen v. Comm'r of Soc. Sec.*, 643 F.App'x 51, 53 (2d Cir. 2016) (The ALJ did incorporate Cohen's moderate limitations in satisfying attendance standards into its residual functioning capacity determination. Although the hypothetical posed to the vocational expert did not explicitly reference these limitations, it implicitly accounted for them otherwise.); *see Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with

others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). Therefore, the ALJ's RFC determination for unskilled work is not inconsistent with moderate limitations in mental functioning.

Second, contrary to Plaintiff's argument, the ALJ's decision thoroughly summarized and discussed the medical opinion evidence provided by Dr. Loomis, Dr. Kamin, Dr. Khan, and Mr. Butler.  (T. 21-23.)  The ALJ provided an analysis and reasoning for the weight afforded to each opinion and cited specific evidence in the record to support her determination.

Although Dr. Loomis opined that Plaintiff had a marked limitation in his ability to make appropriate decisions, Dr. Loomis stated that her opinion was based on her examination and Plaintiff's substance abuse problems which "may significantly interfere with [his] ability to function."  (T. 334.)  As indicated by the ALJ, Plaintiff testified that he was regularly attending substance abuse group treatment meeting and maintained sobriety.  (T. 22 *referring to* T. 49.)  Dr. Kamin opined that Plaintiff had only moderate limitations, at most, in the area of concentration and persistence.  (T. 101.)  And Dr. Kamin opined that Plaintiff had only moderate, at most, adaptive limitations.  (T. 101-102.)  Therefore, the ALJ did not err in not adopting this portion of Dr. Loomis's opinion.

Overall, the ALJ's mental RFC determination is supported by the medical opinions of Drs. Loomis and Kamin.  The ALJ thoroughly outlined the medical opinions in the record regarding Plaintiff's mental limitations, provided adequate reasoning for the weight provided to each opinion, and substantial evidence supported her determination; therefore, the ALJ's RFC determination is upheld.

## C. Opinions of Treating Providers

Plaintiff argues that the ALJ's determination to afford Dr. Khan's opinion "reduced weight" is not supported by substantial evidence and the product of legal error. (Dkt. No. 9 at 18-23 [Pl.'s Mem. of Law].)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

 Here, the ALJ afforded "reduced weight" to Dr. Khan's "check-box opinions" because the ALJ determined the opinions were not supported by explanation or clinical findings, and the opinions were inconsistent with the overall evidence. (T. 22.) The ALJ further determined that Dr. Khan's limitations "significantly exceed[ed]" the limitations imposed by Dr. Magurno. (T. 23.) Lastly, the ALJ reasoned that Dr. Khan's opinion was entitled to reduced weight because he indicated that his assigned limitations lasted for a period of seven months from March 2014 to October 2014. (*Id.*) Regarding Dr. Khan's opinion that Plaintiff would be "off-task" and "absent" the ALJ determined that this opinion was speculative, unsupported by clinical findings, and inconsistent with the overall evidence, which the ALJ concluded revealed a good response to conservative treatment. (*Id.*)

The ALJ provided good reasons for affording Dr. Khan's opinion reduced weight. First, the Second Circuit has held that substantial evidence supported the limited weight that an ALJ afforded an opinion because the check-box form completed by the source did not provide a narrative explanation of the limitations imposed. *Camille v. Colvin*,

652 F.App'x 25, 27 (2d Cir. 2016). Second, contrary to Plaintiff's contention, Dr. Khan did not "observe" pain on a scale of 10/10. (Dkt. No. 9 at 19 [Pl.'s Mem. of Law] *referring to* T. 357-359.) Dr. Khan noted that Plaintiff reported a pain level of 10/10 (T. 357); however, Dr. Khan observed that Plaintiff was in "no acute distress" (T. 359).

Further, the ALJ did not err in noting Plaintiff's conservative treatment. Although Dr. Khan stated in April of 2014 that Plaintiff's pain was "unresponsive to conservative management" (T. 362); the ALJ noted that the majority of Plaintiff's treatment was conservative in nature, consisting primarily of medication management (T. 20). Therefore, the ALJ did not err in noting that Plaintiff's treatment was primarily conservative in nature "because . . . [the ALJ] relied on [a treating doctor's] conservative treatment regimen merely as additional evidence supporting the ALJ's determination rather than as compelling evidence sufficient in itself to overcome an otherwise valid medical opinion, the district court did not impermissibly substitute his own expertise or view of the medical proof for the treating physician's opinion." *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Shaw v. Chater,* 221 F.3d 126, 134–35 (2d Cir.2000) (internal quotations omitted)).

The ALJ did not err in affording more weight to a consultative examiner over a treating source. (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *see Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

In addition, although Plaintiff asserts that the ALJ "improperly assumes incongruence" between Dr. Magurno's and Dr. Khan's limitations (Dkt. No. 9 at 20 [Pl.'s Mem. of Law]), a reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012). Overall, the ALJ provided good reasons for affording Dr. Khan's opinion reduced weight and substantial evidence supports the ALJ's determination as outline above.

Plaintiff next argues that the ALJ erred in affording Plaintiff's treating mental health provider, Mr. Butler, "very little weight." (Dkt. No. 9 at 20-23 [Pl.'s Mem. of Law].) Plaintiff first argues that the ALJ erred in taking into consideration Mr. Butler as a non-acceptable medical source because Mr. Butler's statement was not establishing an impairment. (Dkt. No. 9 at 21 [Pl.'s Mem. of Law].)

Not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or

has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902. Although a non-acceptable treating source's opinion cannot be used to establish the existence of an impairment and it is not entitled to any "special weight," it can be relied on assessing the severity of a plaintiff's impairment, and may be entitled to "some weight" when there is a treatment relationship between the PA and the claimant. *See Zenzel v. Astrue*, 993 F. Supp. 2d 146, 154 (N.D.N.Y. 2012) (citing 20 C.F.R. § 416.913(d)(1)). However, although an ALJ must consider the opinion of a treating source pursuant to SSR 06-03p, where the opinion of an unacceptable medical source conflicts with, or is unsupported by, objective medical evidence, an ALJ may properly decline to accord it weight. *Genier v. Astrue*, 298 Fed.App'x. 105, 108 (2d Cir. 2008); *see Hance v. Colvin*, No. 8:15-CV-1362, 2017 WL 1034721, at *6 (N.D.N.Y. Mar. 15, 2017).

Here, the ALJ provided good reasoning for affording Mr. Butler's opinion "very little weight" and the ALJ explained her assessment in detail. (T. 23.) The ALJ afforded Mr. Butler's opinion very little weight because he was not an acceptable medical source, and his opinions were inconsistent with each other and with the longitudinal medical evidence in the record. (T. 23.) The ALJ specifically noted that Mr. Butler's limitations were inconsistent with the opinions of Drs. Loomis and Kamin. (*Id.*) The ALJ also outlined internal inconsistencies in Mr. Butler's opinions. (*Id.*) The ALJ was permitted to afford Mr. Butler's opinion little weight and the ALJ thoroughly explained her reason for doing so, accordingly, the ALJ did not err in giving Mr. Butler's opinion little weight.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.


Dated:      June 15, 2017

_William B. Mitchell Carter_
William B. Mitchell Carter
U.S. Magistrate Judge